**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

**JOHN LOCKHART,**

                              **Petitioner,**

                  **v.**                                **9:05-CV-1166**
                                                              **(GLS)**

**WILLIAM BROWN, SUPERINTENDENT,**

                              **Respondent.**

**APPEARANCES:**                              **OF COUNSEL:**

**FOR THE PETITIONER:**

**JOHN LOCKHART**
Petitioner *Pro Se*
01-A-2073
Woodbourne Correctional Facility
Riverside Drive
Woodbourne, New York 12788

**FOR THE RESPONDENT:**

**HON. ANDREW M. CUOMO**              **LUKE MARTLAND**
Attorney General for the State of New York    Assistant Attorney General
Attorney for Respondent
120 Broadway
New York, New York 10271

**GARY L. SHARPE**
**UNITED STATES DISTRICT JUDGE**

                       **Decision and Order**

## I. Introduction

The Clerk of the Court has sent *pro se* petitioner John Lockhart's petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254, which he filed on September 15, 2005, to the Court for its review.  *See* Dkt. No. 1.

On February 5, 2001, Petitioner was convicted of second degree burglary (N.Y. PENAL LAW §140.25(2)). Dkt. No. 1, Pet. at 1; Dkt. No. 7, Respondent's Memorandum of Law ("Resp't Mem."), at 1; Transcript of Trial of John Lockhart, ("Trial Tr."), 2/5/01, at 199-201.  The New York Supreme Court, Appellate Division, Third Department, affirmed the conviction on November 18, 2004.  *People v. Lockhart,* 784 N.Y.S.2d 686 (N.Y. App. Div. 2004). The New York Court of Appeals denied leave to appeal on February 25, 2005.  *People v. Lockhart*, 828 N.E.2d 91 (N.Y. 2005).  The Court of Appeals also denied Petitioner's motion for reconsideration on June 29, 2005.  *People v. Lockhart*, 834 N.E.2d 1269 (N.Y. 2005).

Petitioner raises the following grounds for habeas relief: (1) the show-up identification procedure was unduly suggestive; (2) the trial court improperly admitted evidence of a different burglary in violation of his right to due process; and (3) the evidence was insufficient to prove the element

2

of intent required to sustain his conviction for second degree burglary.  Dkt.

No. 1 at 6-9; Dkt. No. 10, Traverse, Reply Memorandum ("Reply Mem."), at

1-8.  For the reasons that follow, the petition is **denied**.

## II. Background

### A. Facts

According to the testimony adduced at trial, on December 10, 1999,

Nick Sabatino lived on the first floor of a two-family home located at 56

Forest Avenue in Albany, New York. Trial Tr., at 35.  At approximately 1:30

p.m., Sabatino was in the kitchen drinking coffee and heard the doorbell

ring two times.  *Id.* at 36.  He went toward the front door and saw Petitioner

outside.  He did not answer the door, believing Petitioner was soliciting

donations.  *Id.*  As Sabatino walked back toward the kitchen, he heard a

noise.  He saw that the glass near the doorknob on the locked front entry

door was broken, and Petitioner was standing inside his house. *Id.* at 37,

44-45, 79.  Sabatino confronted Petitioner, and Petitioner told him a kid

broke the window and ran up the street.  *Id.* at 46.  Sabatino told Petitioner

to "[g]et out of here," and Petitioner left.  *Id.*

Sabatino got into his truck and drove up the street to find Petitioner.

He encountered Officer Peter Isaacson and told him what had happened.

*Id.* at 47-48, 77-79.[1]  Sabatino described Petitioner as a black male, wearing dark clothing and a hat, and carrying a brown umbrella. Suppression Hearing Transcript ("Hearing Tr."), 6/12/00, at 8, 37; Trial Tr. at 95.  Officer Isaacson radioed the description to other police units.  Trial Tr. at 80.

Detective Timothy Leonard met with Officer Isaacson and confirmed the description.  He then drove through the neighborhood looking for the suspect.  *Id.* at 93-94.  Detective Leonard saw Petitioner, who matched the description, at the corner of Grove and New Scotland Avenues.  *Id.* at 95-96.  He exited his car and approached Petitioner.  Petitioner identified himself and stated that he lived with his girlfriend on Orange Street, that they had an argument, and that he had taken his things and gone for a walk.  *Id.* at 96-98.  Orange Street was on the "opposite side of the city."  *Id.* at 97.  Petitioner also stated that he was going to St. Peter's Hospital. Petitioner was traveling eastbound, but the hospital was westbound.  *Id.* at 98.  In addition to the umbrella, Petitioner was carrying a portable radio ("boombox") and a knapsack containing compact discs ("CDs"), earrings

---

[1] Officer Isaacson was in the area responding to a radio call regarding a suspicious person at 31 Forest Avenue.  Hearing Tr. at 6.

and a VCR with the cord still attached to it.  *Id.*  Officer Isaacson drove

Sabatino to the intersection of Grove and New Scotland Avenues, and

Sabatino identified Petitioner as the man inside his home.  Hearing Tr. at

11-12; Trial Tr. at 51, 61-62, 67, 80-82.

Karen DeWitt lived at 12 Glendale Avenue in Albany, New York.  Trial

Tr. at 70.  She arrived home from work at approximately 6:00 p.m. and

discovered her front door was open and a window had been smashed.  *Id.*

at 70 (the "Glendale Avenue burglary").  A VCR, Sony boom box, CDs and

earrings were missing.  *Id.* at 71.  She identified the items Petitioner was

carrying in the knapsack when Detective Leonard stopped him as those

taken from her home.  *Id.* at 71, 108.

## B. <u>State Court Proceedings</u>

An Indictment was returned on August 8, 2000 charging Lockhart with

one count of second degree burglary relating to the Sabatino home (N.Y.

PENAL LAW § 140.25(2)).  Lockhart was also charged with criminal

possession of stolen property in connection with the items taken during the

Glendale Avenue burglary, and pleaded guilty to that charge before his trial

for the Sabatino burglary began.  Transcript of Pretrial Proceedings

("Pretrial Tr."), 9/14/00, at 22.  Lockhart was subsequently indicted for the

5

Glendale Avenue burglary, but that indictment was dismissed after the Sabatino burglary trial. *Id.;* Dkt. No. 10, Reply Mem. at 8.

The Honorable Thomas A. Breslin, Albany County Court Judge, presided over Petitioner's trial proceedings.  Lockhart was represented by Thomas L. Dulin, Esquire.  A combined Wade[2]/Huntley[3] hearing was held on June 12, 2000.  At the close of the hearing, the trial court ruled from the bench that the manner in which the show-up identification procedure was conducted was not unduly suggestive. Hearing Tr. at 57-58.  It further found that the police had enough information to stop Petitioner and ask him to remain present until a witness was brought to the location, and that the show-up was conducted within ten minutes and within blocks of the reported burglary.  *Id.*  The court also denied Petitioner's motion to suppress his statements to police, ruling that the questions asked of Petitioner were investigatory in nature and his statements were not the

---

[2] *United States v. Wade*, 388 U.S. 218 (1967).  The purpose of a *Wade* hearing is to determine whether identification testimony should be suppressed because the manner in which the identification of the suspect was obtained was unduly suggestive. *See Blas v. Herbert*, No. 02 Civ. 6257, 2003 WL 22480093, at *2 n. 3 (S.D.N.Y. Oct. 21, 2003).

[3] *People v. Huntley,* 204 N.E.2d 179 (N.Y. 1965).  A *Huntley* hearing is conducted to determine whether a defendant's statements to the police must be suppressed on the grounds that he was subjected to custodial interrogation without the warnings required under *Miranda v. Arizona*, 384 U.S. 436 (1966).  *See Harris v. New York*, 202 F. Supp. 2d. 3, 4 & n.3 (S.D.N.Y. 2001); *see also* N.Y. CRIM. PROC. LAW ("CPL") § 710.

product of custodial interrogation.  Since Petitioner was not subject to custodial interrogation, the court found that there was no violation of Petitioner's *Miranda*[4] rights.  *Id.* at 58-59.

A jury trial began and concluded on February 5, 2001.  The jury convicted Lockhart.  Trial Tr. at 199-201.  On March 30, 2001, Lockhart appeared before Judge Breslin for sentencing.  The prosecutor moved to have Petitioner declared a persistent felony offender.  Sentencing Transcript ("Sentencing Tr."), March 30, 2001, at 2-33.  The trial court denied the motion after a hearing.  *Id.* at 37-39.  Defense counsel moved to set aside the verdict, and the court denied the motion.  Petitioner was sentenced, as a second felony offender, to a determinate term of fifteen years in prison followed by five years postrelease supervision.  *Id.* at 48.

### C.  This Action

On September 15, 2005, Petitioner filed a *pro se* petition in this District seeking a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254.  *See* Dkt. No. 1.  The respondent was directed to file his response to that submission in an Order dated September 29, 2005.  *See* Dkt. No. 3.  On February 6, 2006, the Office of the Attorney General for the State of New

---

[4] *Miranda v. Arizona*, 384 U.S. 436 (1966).

7

York, acting on respondent's behalf, filed a response and memorandum of law in opposition to the petition. *See* Dkt. Nos. 7, 8.  On March 6, 2006, Petitioner filed a Traverse.  Dkt. No. 10.

## III.  Discussion

### A.  Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may not grant *habeas* relief to a state prisoner on a claim unless the state courts adjudicated the merits of the claim and such adjudication either:

> 1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Hawkins v. Costello*, 460 F.3d 238, 242 (2d Cir. 2006), *cert. denied*, 127 S. Ct. 1267 (2007); *DeBerry v. Portuondo*, 403 F.3d 57, 66 (2d Cir. 2005); *Miranda v. Bennett*, 322 F.3d 171, 177-78 (2d Cir. 2003); *Boyette v. LeFevre*, 246 F.3d 76, 88 (2d Cir. 2001).[5]  In providing guidance

---

[5] It should be noted that "clearly established federal law" in this context "refers only to the holdings of the Supreme Court." *Rodriguez v. Miller*, 499 F.3d 136, 140 (2d Cir. 2007) (citing *Williams v. Taylor,* 529 U.S. 362, 412 (2000)).

concerning application of this test, the Second Circuit has recently noted
that:

> [A] state court's decision is "contrary to" clearly established federal
> law if it contradicts Supreme Court precedent on the application of a
> legal rule, or addresses a set of facts "materially indistinguishable"
> from a Supreme Court decision but nevertheless comes to a different
> conclusion than the Court did. [*Williams*, 529 U.S.] at 405-06; *Loliscio
> v. Goord*, 263 F.3d 178, 184 (2d Cir. 2001).... [A] state court's
> decision is an "unreasonable application of" clearly established
> federal law if the state court "identifies the correct governing legal
> principle from [the Supreme] Court's decisions but unreasonably
> applies that principle to the facts" of the case before it. *Williams*, 529
> U.S. at 413.

*Thibodeau v. Portuondo*, 486 F.3d 61, 65 (2d Cir. 2007); *see also Williams
v. Artuz*, 237 F.3d 147, 152 (2d Cir. 2001) (citing *Francis S. v. Stone*, 221
F.3d 100, 108-09 (2d Cir. 2000)).

Significantly, a federal court engaged in habeas review is not charged
with determining whether the state court's determination was merely
incorrect or erroneous, but instead whether such determination was
"objectively unreasonable." *Williams,* 529 U.S. at 409; *see also Sellan v.
Kuhlman*, 261 F.3d 303, 315 (2d Cir. 2001).  Objectively unreasonable in
this context has been interpreted as meaning that "some increment of
incorrectness beyond error" is required for the habeas court to properly
grant the application. *Earley v. Murray*, 451 F.3d 71, 74 (2d Cir. 2006)

9

(quoting *Francis S.*, 221 F.3d at 111).

If a state court does not adjudicate a petitioner's federal claim "on the merits," the state court's decision is not entitled to AEDPA deference and instead, the federal *habeas* court must apply the pre-AEDPA standard of *de novo* review to the state court's disposition of the federal claim. *See Cotto v. Herbert*, 331 F.3d 217, 230 (2d Cir. 2003) (citing *Aparicio v. Artuz*, 269 F.3d 78, 93 (2d Cir. 2001)).

**B.   Review of Lockhart's Petition**

### 1.  The Show-up Identification Procedure

Lockhart first claims that the show-up identification procedure was unduly suggestive and that evidence of the show-up and the victim's in-court identification should have been suppressed.  Dkt. No. 1, Pet. at 6; Dkt. No. 10, Reply Mem., at 1-5.  Respondent argues that this claim is without merit.  Dkt. No. 7, Resp't Mem., at 12-15.

### I.  Clearly Established Supreme Court Precedent

A criminal defendant has a due process right under the Fourteenth Amendment to be free from pretrial identification procedures that are "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."  *Simmons v. United States*, 390 U.S. 377, 384

(1968).  *See Manson v. Brathwaite*, 432 U.S. 98, 105-08 (1977); *Neil v.*

*Biggers*, 409 U.S. 188, 196-97 (1972); *United States v. Nersesian*, 824 F.2d

1294, 1319 (2d Cir. 1987); *Sullivan v. Superintendent, Elmira Corr. Fac.,*

No. 04-CV-444, 2008 WL 216299, at *4 (N.D.N.Y. Jan. 24, 2008) (Sharpe,

J., and Bianchini, M.J.); *Diggs v. Spitzer,* No. 06-CV-584S, 2007 WL

3036862, at *6 (W.D.N.Y. Oct. 16, 2007*).  In deciding whether an

identification procedure was admissible, a reviewing court must first

determine if it "unduly or unnecessarily suggested that the defendant was

the perpetrator."  *Walker v. Poole,* No. 03-CV-6088, 2008 WL 1787412, at

*6 (W.D.N.Y. Apr. 22, 2008) (quoting *Raheem v. Kelly*, 257 F.3d 122, 133

(2d Cir. 2001)).  If the identification procedure was not unnecessarily

suggestive, there is no "due process obstacle to admissibility."  *Raheem*,

257 F.3d at 133.  The reliability of the eyewitness identification then

becomes a matter for the jury.  *Walker*, 2008 WL 1787412, at *6.  If the

court finds the procedure was unnecessarily suggestive, it must then

determine whether the identification was independently reliable. *Id.* (citing

*Manson*, 432 U.S. at 110-14).  A state court's factual findings are entitled to

a presumption of correctness that a habeas corpus petitioner bears the

burden of overcoming by clear and convincing evidence. *See* 28 U.S.C. §

2254(d), (e)(1).

Show-up identification procedures, in which a witness is shown a single suspect for the purpose of identification shortly after a crime, are generally disfavored. *Stovall v. Denno*, 388 U.S. 293, 302 (1967), *overruled on other grounds, Griffith v. Kentucky*, 479 U.S. 314 (1987); *People v. Ortiz*, 686 N.E.2d 1337, 1339 (N.Y. 1997). These procedures are not, however, inherently unconstitutional and violate due process only if they are "unnecessarily suggestive." *Jones v. West*, 473 F. Supp. 2d 390, 417 (W.D.N.Y. 2007) (quoting *United States v. Bautista*, 23 F.3d 726, 729-30 (2d Cir. 1994)). When determining whether a show-up was unnecessarily suggestive, courts should consider the totality of the circumstances surrounding it, weighing the advantages of conducting the procedure against the risk of suggestiveness and tainting of a witness's future identifications. *Walker*, 2008 WL 1787412, at *6.

The Second Circuit has recognized that show-up procedures are a valid and necessary way to ensure that police have detained the actual perpetrators of the crime at issue and that innocent people are released, and have consistently upheld the validity of show-ups when they are conducted in close temporal and geographic proximity to the crime scene.

12

*See*, *e.g.*, *Bautista*, 23 F.3d at 729-30 (identification by confidential informant of handcuffed defendant at time of his arrest not "unnecessarily suggestive," because it was necessary to identify perpetrators and release innocent persons); *United States v. Butler*, 970 F.2d 1017, 1021 (2d Cir.1992) (identification proper where, less than thirty minutes after the robbery of a check cashing business, suspects were brought to victim who was sitting in a police car); *United States v. Sanchez*, 422 F.2d 1198, 1199-1200 (2d Cir. 1970) ("prompt on-the-scene confrontation" in which police drove suspects by witnesses on the street thirty minutes after a robbery was "consistent with good police work" where defendants protested their innocence; not impermissibly suggestive for police to ask witnesses if suspects were "the guys").

### II.  Contrary to, or Unreasonable Application of, Clearly Established Supreme Court Precedent

After examining the circumstances under which the showup was conducted, the state courts concluded that it was not unduly suggestive. The trial court concluded, after a hearing, that the procedure used and the circumstances surrounding it "was in all respects proper."  Hearing Tr. at 58.  The court noted that the show-up occurred within ten minutes of the

13

initial report to police and within a few blocks of the incident.  *Id.*  It also

ruled that the procedure was beneficial to both police and to Petitioner

because "if he had not been identified he would have been free to go."  *Id.*

It finally noted that nothing the police did was suggestive.  *Id.*

        The Appellate Division agreed.  It also ruled that the show-up was

"reasonable and not unduly suggestive" and that it was "conducted in close

geographic and temporal proximity to the crime" *Lockhart*, 784 N.Y.S.2d at

688 (quoting *Ortiz*, 686 N.E.2d at 1339 (further citations omitted)). The court

ruled that although Petitioner was viewed while holding an umbrella, and

uniformed officers stood near him during the show-up, those factors were

not "so unnecessarily suggestive as to create a substantial likelihood of

misidentification."  *Id.* (quoting *People v. Hughes*, 732 N.Y.S.2d 122, 126

(N.Y. App. Div. 2001)).

        A review of the circumstances surrounding the show-up supports the

Appellate Division's determination.  The record shows that police officials

conducted this show-up identification procedure because they were trying

to make a prompt and reasonable effort to ascertain whether Petitioner was

the person Sabatino saw inside his home.  Petitioner was detained within

ten minutes and within two and one-half blocks of the crime scene.  Hearing

Tr. at 6-10, 31-32.  Police officials did nothing to influence Sabatino's

identification of Petitioner.  Petitioner was not handcuffed or physically

restrained during the show-up and he was not arrested until after Sabatino

identified him.  Hearing Tr. at 24, 41.  Officer Isaacson did not tell Sabatino

that they detained the person who broke into his home, but instead told

Sabatino that "a detective stopped an individual" and asked him to give a

"thumb-up or thumb-down" if he was the person Sabatino saw in his home.

Hearing Tr. at 11.  *See Sanchez*, 422 F.2d at 1199-1200.

On While two uniformed police officers and one plainclothes detective

were standing next to Petitioner during the show-up, that factor does not

compel a finding that the show-up was unduly suggestive.  The Second

Circuit has held that fact of police custody is a "necessary incident[] of an

on-the-scene identification" that does not "render the pre-trial identification

procedure unnecessarily suggestive."  *Bautista*, 23 F.3d at 730 (show-up

not unnecessarily suggestive where defendant was presented to the

witness "in handcuffs; at night; in the custody of police officers; with his face

lit by flashlights; and in the presence of [an officer] who, each time [the

witness] identified a suspect, radioed to his fellow officers, '[I]t's a hit' ");

*Jones,* 473 F. Supp. 2d at 418 (show-up conducted while petitioner

15

handcuffed and accompanied by at least one police officer was not unduly

suggestive) (citing *Bautista*, 23 F.3d at 730); *Torrez v. Sabourin*, No. 00

CIV. 3286, 2001 WL 401444, at *5 (S.D.N.Y. Apr.19, 2001) (identification

not unduly suggestive where complainant identified defendant while he was

on his hands and knees surrounded by police officers and patrol cars);

*United States v. Ortiz*, No. 99 CR. 532 DC, 2000 WL 37998, at *1 (S.D.N.Y.

Jan. 18, 2000) (show-up not unduly suggestive where petitioner was in

handcuffs, standing next to a marked police car and accompanied by

uniformed police officers); *Styles v. Van Zandt*, No. 94 Civ. 1863, 1995 WL

326445, at *3-4 (S.D.N.Y. May 31, 1995) (street show-up not unduly

suggestive where petitioner was not restrained and was standing near three

or four police officers), *aff'd* 101 F.3d 684 (2d Cir. 1996).  Sabatino's

identification of Petitioner may have been affected by the fact that Petitioner

was holding the umbrella Sabatino described to police.  *See, e.g. Brisco v.

Phillips*, 376 F. Supp. 2d 306, 315 (E.D.N.Y. 2005) (show-up unduly

suggestive where the petitioner was naked from the waist up and was

holding a pair of wet maroon shorts that fit the "distinctive description of the

perpetrator's clothing" given by the witness). That fact alone does not,

however, compel a finding that the show-up was impermissibly suggestive.

16

S*ee Stovall,* 388 U.S. at 302 (a "violation of due process of law in the conduct of a confrontation depends on the totality of the circumstances surrounding it").

Even if the identification procedure was impermissibly suggestive, in-court identification testimony is still admissible if, considering the totality of the circumstances, the court considers the testimony to be independently reliable. *United States v. Wong*, 40 F.3d 1347, 1359 (2d Cir. 1994); *Butler*, 970 F.2d at 1021. "Even grossly suggestive procedures will not require suppression of a witness'[s] identification testimony if it is clearly reliable, independent of improper procedures." S*tyers v. Smith*, 659 F.2d 293, 297 (2d Cir.1981). *See also Neil,* 409 U.S. at 198-200. Factors used to determine independent reliability include: 1) the opportunity of the witness to view the criminal at the time of the crime; 2) the witness' degree of attention; 3) the accuracy of the witness' prior description of the criminal; 4) the level of certainty demonstrated by the witness at the confrontation; and 5) the length of time between the crime and the confrontation. *Neil*, 409 U.S. at 199-200. S*ee also Manson,* 432 U.S. at 114; *Wong*, 40 F.3d at 1359.

Sabatino had ample opportunity to observe Petitioner. He saw

17

Petitioner standing inside his front door at approximately 1:00 p.m.  He

confronted Petitioner and spoke to him.  Petitioner did not immediately flee,

but instead remained face-to-face with Sabatino long enough for Sabatino

to order him to leave and for Petitioner to offer an explanation for why he

was there. Hearing Tr. at 26-27; Trial Tr. at 57-59.  Sabatino identified

Petitioner from a distance of between fifteen and twenty feet, within minutes

of the encounter and without hesitation. Hearing Tr. at 11-12, 23. Sabatino's

description of Petitioner was accurate.  *Id.* at 8-9.  He told Officer Isaacson

that Petitioner was a black male, aged between 30 to 40 years old, dressed

in dark clothing and a hat, and carrying a brown umbrella.  Hearing Tr. at 8-

9, 17.  Petitioner was thirty-five years old at the time of the burglary.  *See*

Dkt. No. 10, Traverse, Ex. E, Document dated February 27, 2001, listing

Petitioner's date of birth as September 30, 1964. Petitioner was wearing a

black coat, blue jeans and white sneakers when he was stopped, and was

carrying a brown umbrella.  *Id.* at 30, 37.  Although Petitioner was not

wearing a hat when he was stopped by police, this discrepancy goes to "the

weight of the identification, not to its admissibility."  *Dunnigan v. Keane*, 137

F.3d 117, 130 (2d Cir. 1998).  Thus, even if the show-up procedure was

unduly suggestive, Sabatino's identification would nonetheless have been

18

admissible because it was independently reliable of the show-up.  *Neil*, 409 U.S. at 199-200; *Raheem,* 257 F.3d at 135-36.

The Appellate Division's rejection of this claim was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.  This claim is dismissed.

### 2.  Evidence of the Glendale Avenue Burglary

Petitioner next claims that the trial court improperly admitted evidence of "alleged 'uncharged' crimes" in violation of his right to due process.  Dkt. No. 1, at Ground Two; Dkt. No. 10, Reply Mem. at 5-7.  Specifically, Petitioner claims the trial court should not have admitted evidence that when he was arrested, he was carrying items the police subsequently learned had been stolen during the Glendale Avenue burglary. *Id.* Respondent argues that this claim is without merit.  Resp't Mem. at 15-21.

### I. Clearly Established Supreme Court Precedent

Evidentiary questions are generally matters of state law and raise no federal constitutional issue for habeas review.  *See Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Dunnigan,* 137 F.3d at 125; *Marmulstein v. Phillips*, No. 05-CV-230, 2007 WL 804111,

at *3 (N.D.N.Y. Mar. 14, 2007) (Hurd, J., and Homer, M.J.).  A decision to admit evidence of a defendant's uncharged crimes or other bad acts under *People v. Molineux*, 61 N.E. 286 (N.Y. 1901), constitutes an evidentiary ruling based on state law. *Sierra v. Burge,* No. 06-CV-14432, 2007 WL 4218926, at *5 (S.D.N.Y. Nov. 30, 2007) (citing *Roldan v. Artuz*, 78 F. Supp. 2d 260, 276-77 (S.D.N.Y. 2000) ("A habeas claim asserting a right to relief on *Molineux* grounds must rise to the level of a constitutional violation ... because *Molineux* is a state law issue.") (citations omitted)).  Federal courts may issue a writ of *habeas corpus* based upon a state evidentiary error only if the petitioner demonstrates that the alleged error violated an identifiable constitutional right, and that the error was "so extremely unfair that its admission violates fundamental conceptions of justice."  *Dunnigan,* 137 F.3d at 125 (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)); *see Jones v. Conway*, 442 F. Supp. 2d 113, 130 (S.D.N.Y. 2006). Petitioner "bears a heavy burden because evidentiary errors generally do not rise to constitutional magnitude."  *Sierra*, 2007 WL 4218926, at *5 (quoting *Copes v. Shriver*, No. 97-2284, 1997 WL 659096, at *3 (S.D.N.Y. Oct. 22, 1997) (citations omitted)).

Under New York law, evidence of uncharged crimes, prior

convictions or bad acts is admissible to prove a specific crime if it tends to establish motive, intent, absence of mistake or accident, a common scheme or plan between the commission of two or more crimes, or the identity of the person charged with the commission of the crime. *Molineux*, 61 N.E. at 294. See *People v. Ventimiglia*, 420 N.E.2d 59 (N.Y. 1981) (requiring that a prosecutor who intends to use evidence of other crimes or bad acts in the direct case seek an advance ruling).[6] New York courts have frequently admitted evidence of convictions and uncharged crimes to show that a defendant had the requisite intent to commit a particular crime. *See Neloms v. Brown*, No. 05 Civ. 8162, 2007 WL 809703, at *9 (S.D.N.Y. Mar. 16, 2007) ("The evidence [gun, stun gun and duct tape] that Neloms had just engaged in a robbery was plainly relevant to the question of his intent when he possessed the gun."); *Yapor v. Mazzuca,* No. 04 Civ. 7966, 2005 WL 894918, at *20 (S.D.N.Y. Apr. 19, 2005) (evidence of uncharged crimes

---

[6] Petitioner asserts that since he was indicted for the Glendale Avenue burglary, the trial court incorrectly permitted this evidence to be introduced at trial as an "uncharged crime." Dkt. No. 10, Traverse, Reply Mem., at 5-7. Whether the evidence is categorized as uncharged crimes or prior or pending criminal charges is a distinction without a difference. The evidence is admissible under New York law if it is probative of a legally relevant and material issue before the court and the probative value outweighs the prejudicial effect. *People v. Schwartz*, 706 N.Y.S.2d 586, 587-88 (N.Y. Sup. Ct. 2000). *See People v. Blanchard*, 442 N.Y.S.2d 140, 142-43 (N.Y. App. Div. 1981)("where the evidence of past criminality is probative of an issue in the case, its admissibility will depend upon a balance between its probative value versus its potential for prejudice") (citing *Ventimiglia* and *Molineux*).

or prior bad acts is admissible to show intent), *report and recommendation adopted*, 2005 WL 1845089 (S.D.N.Y. Aug. 3, 2005); *Johnson v. Greiner*, No. 00 Civ. 8171, 2001 WL 876811, at *7 (S.D.N.Y. Aug. 2, 2001) (evidence of prior assaults was properly admitted to show petitioner's intent), *aff'd* 56 Fed. Appx. 38 (2d Cir. 2003) (summary order); *People v. Truesdale,* 845 N.Y.S.2d 363, 365 (N.Y. App. Div. 2007) (evidence of prior crime and *modus operandi* of the prior crime were admissible, with limiting instructions, to show the defendant's intent); *People v. Jones*, 735 N.Y.S.2d 276, 277-78 (N.Y. App. Div. 2001) (evidence of uncharged assaults and threats made by defendant against the victim were admissible to show defendant's intent, where he was charged with unlawfully entering the victim's dwelling with intent to commit a crime inside); *People v. Lawson*, 508 N.Y.S.2d 623, 624 (N.Y. App. Div. 1986) (references to a burglary in which the victim's checks were stolen was admissible in a forgery prosecution because it was highly probative to establish the defendant's intent to commit forgery).

### II.  Contrary to, or an Unreasonable Application of, Clearly Established Supreme Court Precedent

Initially, the Supreme Court has not decided whether the admission of

22

"prior crimes" evidence would violate due process. *See Jones,* 442 F. Supp. 2d at 131 (citing *Estelle,* 502 U.S. at 75 n. 5 ) ("[W]e express no opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime.").  Thus, the Appellate Division's rejection of this claim cannot be contrary to or an unreasonable application of clearly established Supreme Court precedent. *Id.; see also Scott v. Superintendent, Green Haven Corr. Fac.*, No. 03-CV-146S, 2007 WL 189464, at *23 (W.D.N.Y. Jan. 23, 2007).

In any event, Petitioner has not demonstrated that evidence of his possession of items stolen during the Glendale Avenue burglary was improperly admitted under New York law.  This evidence was admitted not to show Lockhart's propensity to commit the Sabatino burglary, but to show his intent.  The Appellate Division noted that the People had to prove that Petitioner had the intent to commit a crime upon entering the victim's home. *Lockhart*, 784 N.Y.S.2d at 688-89.  Petitioner claimed that he entered the victim's home to advise him that a kid broke a window. *Id.*  The Appellate Division found that the probative value of the evidence of Petitioner's possession of stolen items outweighed any potential prejudice because his "possession of the property stolen from another home in the same

23

neighborhood that day at the time of his arrest was probative of his intent to commit larceny upon his entry into the victim's home." *Id.* The Appellate Division properly determined that the Glendale Avenue burglary was relevant to Petitioner's intent, and, thus, its decision did not violate any state evidentiary rule. *Neloms,* 2007 WL 809703, at *9*; Johnson,* 2001 WL 876811, at *7; *Jones,* 735 N.Y.S.2d at 277-78. The admission of this testimony did not render the trial "so extremely unfair" as to "violate fundamental conceptions of justice." *Dunnigan*, 137 F.3d at 125.

Furthermore, the trial court placed strict limitations on what testimony the prosecutor could elicit regarding this evidence. It permitted the prosecutor to elicit testimony that Karen DeWitt identified items that Petitioner possessed when he was arrested as those stolen from her home. Trial Tr. at 8. The trial court also gave an extensive limiting instruction immediately following the testimony. The court told the jury that it was permitted to consider this evidence "solely and exclusively in determining the intent of the accused at the time he's alleged to enter the home of Mr. Sabatino." Trial Tr. at 73. The court instructed the jury again, during the final jury charge, that the sole purpose of the evidence was to aid in determining Petitioner's intent, and instructed the jury that "[i]t would be

improper for you to consider [this evidence] on any issue other than the intent of the accused at the time he's alleged to have entered the house of Mr. Sabatino . . ." *Id.* at 161.  The jury is presumed to have understood and followed the limiting instructions issued by Judge Breslin.  *See Zafiro v. United States*, 506 U.S. 534, 540 (1993); *Roldan v. Artuz*, 78 F.Supp. 2d 260, 281 (S.D.N.Y. 2000).

Finally, it is notable that the evidence at issue here would have been admissible under the Federal Rules of Evidence, which "further suggests that the introduction of the evidence did not violate Petitioner's due process rights." *Toland v. Walsh*, No. 02-CV-0399, 2008 WL 820184, at *12-13 (N.D.N.Y. Mar. 26, 2008) (Sharpe, J., and Bianchini, M.J.) (citing Fed. R. Evid. 404(b) (evidence of prior misconduct is not admissible to prove bad character, but may be admissible "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of accident or mistake")).  Since the admission of the evidence satisfies the federal rules of evidence, it "will not violate a [state] criminal defendant's due process rights or provide a basis for habeas corpus relief." *Long v. Donnelly*, 335 F. Supp. 2d 450, 463 (S.D.N.Y. 2004) (quoting *Ford v. Crinder*, No. 97 Civ. 3031, 2001 WL 640807, at *5 (S.D.N.Y. Jun. 8,

2001)).

This claim is dismissed.

### 3.  Sufficiency of the Evidence - Intent

Petitioner next claims that the evidence was insufficient to establish that he had the requisite intent to commit a crime inside Sabatino's home. Dkt. No. 1, at 7, Dkt. No. 10, Reply Mem. at 7-8.  Respondent argues that this claim is without merit.  Resp't Mem. at 22-24.

Petitioner raised this claim on direct appeal in a *pro se* supplemental brief.  See Dkt. No. 8, Ex. b.  The Appellate Division stated that it "considered the arguments raised in [petitioner's] pro se supplemental brief and find that they lack merit."  *Lockhart*, 784 N.Y.S.2d at 689.  That determination represents an adjudication on the merits and is entitled to AEDPA deference.  *Sellan,* 261 F.3d at 311-12.

### I.  Clearly Established Supreme Court Precedent

A petitioner who challenges a conviction on the sufficiency of the evidence bears a "very heavy burden."  *United States v. Quattrone*, 441 F.3d 153, 169 (2d Cir. 2006); *Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir. 2002).  The Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction except upon

26

proof beyond a reasonable doubt of every fact necessary to constitute the crimes with which he is charged.  *See Fiore v. White*, 531 U.S. 225, 228-29 (2001); *Jackson v. Virginia*, 443 U.S. 307, 315 (1979).  This inquiry "does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit."  *Herrera v. Collins*, 506 U.S. 390, 402 (1993) (emphasis in original).  A habeas petitioner claiming that there was insufficient evidence supporting the conviction is entitled to relief under 28 U.S.C. § 2254 only if "upon the record evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt."  *Jackson,* 443 U.S. at 324; *see also Schlup v. Delo*, 513 U.S. 298, 323 n. 38 (1995).  The reviewing court is required to consider the evidence in the light most favorable to the prosecution, and draw all inferences in its favor.  *Jackson,* 443 U.S. at 319.[7] "When considering the sufficiency of the evidence of a state conviction, '[a] federal court must look to state law to determine the elements of the crime.'" *Ponnapula,* 297 F.3d at 179 (quoting *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999)).

---

[7] The *Jackson* standard is clearly established federal law as determined by the Supreme Court. *See Huber v. Schriver*, 140 F. Supp. 2d 265, 276 n. 5 (E.D.N.Y. 2001) (citing *Francis S.,* 221 F.3d at 114) (other citation omitted); *see also Santana v. Kuhlmann*, 232 F. Supp. 2d 154, 166-67 (S.D.N.Y. 2002).

Under New York law, the state had to prove that Petitioner knowingly entered the victim's home (a dwelling) with the "intent to commit a crime therein."  N.Y. PENAL LAW §140.25(2).  There is no requirement that the prosecution prove what particular crime the defendant intended to commit, or that the intended crime was actually committed.  *Floyd v. Miller*, No. 01-CV-2097, 2003 WL 21845995, at *7 (E.D.N.Y. Aug. 6, 2003) (citing *People v. Mackey*, 401 N.E.2d 398, 401 (N.Y. 1980)).  Intent may be inferred from the circumstances, including the actions of the accused, and may be proven by direct or circumstantial evidence.  *Mejias v. Allard,* No. 03-CV-5195, 2006 WL 119033, at *16 (E.D.N.Y. Jan. 13, 2006); *Stone v. Stinson*, 121 F. Supp. 2d 226, 247 (W.D.N.Y. 2000); *People v. Price*, 825 N.Y.S.2d 868, 869 (N.Y. App. Div. 2006).

## II.  Contrary to, or an Unreasonable Application of, Clearly Established Supreme Court Precedent

Petitioner does not claim that the evidence was insufficient to establish that he knowingly and unlawfully entered Sabatino's home.  *See* Trial Tr. at 36-37, 40-41, 43-45.  Instead, Petitioner claims the evidence was insufficient to establish that he intended to commit a crime.  The evidence was sufficient to prove, circumstantially, that Petitioner possessed the requisite intent based upon his statements to Sabatino and the manner in

28

which he entered Sabatino's home.  *See. e.g.*, *Mackey*, 401 N.E.2d at 401

("the intent necessary for burglary can be inferred from the circumstances

of the entry itself" ).  To get inside Sabatino's home, Petitioner had to open

an unlocked porch door, walk up stairs, and open an unlocked screen door

before encountering the locked entry door.  Trial Tr. at 40-41, 43-45.  The

glass on the locked entry door was broken near the doorknob. *Id.* at 40-41.

When confronted, Petitioner claimed he was trying to alert Sabatino that a

kid broke the glass and ran.  But Sabatino did not see anyone fleeing, and

the broken glass was on the last of three doors that led to Sabatino's home,

separated from the street by a porch and steps.  *Id.* at 36-37, 40-41, 43-45,

58.

Petitioner's intent may also be inferred from the circumstances

surrounding his arrest.  When Petitioner was stopped by Detective Leonard,

he stated that he had been in a fight with his girlfriend in their Orange Street

apartment and that he took his things and went for a walk.  *Id.* at 97.

Orange Street was on the opposite side of the city.  *Id.*  Petitioner also

claimed that he was heading toward St. Peter's Hospital, but the hospital

was located in the opposite direction.  *Id.* at 98.  Finally, the items Petitioner

claimed he took from his own apartment were identified as those stolen

29

from Karen DeWitt the same day Petitioner was arrested.  *Id.* at 98-99.

Under the facts and circumstances of this case, it was not irrational to have found that each element of burglary in the second degree, including the requisite intent, was proven beyond a reasonable doubt.  The Appellate Division did not act contrary to or unreasonably apply Supreme Court precedent in rejecting Petitioner's claim, and the petition on that ground is denied.

## IV.  <u>Certificate of Appealability</u>

For the reasons stated, Lockhart's § 2254 petition (Dkt. No. 1) is denied in its entirety, and this action is dismissed.  No certificate of appealability shall issue because Lockhart has failed to make a "substantial showing of a denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2) ("A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."); *see also Lucidore v. New York State Div. of Parole*, 209 F.3d 107, 112 (2d Cir. 2000).

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Lockhart's petition for a writ of *habeas corpus* is **DISMISSED**; and it is further

30

**ORDERED** that the Clerk of the Court provide a copy of his Order to the parties.

**IT IS SO ORDERED.**

Date: June 4, 2008
Syracuse, New York

Gary L. Sharpe
U.S. District Judge